OAKLAND MOTOR CO. *v.* AMERICAN FIDELITY CO.

1. INSURANCE—INDEMNITY POLICY—ACCIDENT INSURANCE—AUTO-MOBILES—NOTICE OF ACCIDENT—BREACH OF POLICY.

Plaintiff, an automobile manufacturing corporation, was insured in defendant company against accidents or injuries to third persons by its motor cars, in testing them or before they were sold. By the terms of the policy, upon the occurrence of an accident, the insured was required to give immediate notice in writing with fullest information obtainable to the agent or home office of the defendant: and if a claim was made on account of any accident the insured was to give like notice and state full particulars. The policy obligated the insurer to settle or defend litigation and hold the plaintiff harmless, when due notice of service and of suit was given. Defendant

claimed, in an action on the policy, that notice of an accident for which suit was begun had not been served until over three months after the injury, and that in the meantime one of the testers involved in the injury had left plaintiff's employ and gone to unknown parts, and it had suffered prejudice from the neglect to give notice. One Page, chief inspector of mechanical parts, who had supervision over the testers, and defendant's head tester, both learned of the accident shortly after it occurred, but claimed the two testers involved denied the claim. The head inspector had authority to hire and discharge men. *Held*, that though neither employee who had notice of the injury or claim reported the accident to their superiors, their failure to report did not relieve their employer, and that defendant was discharged from liability on the policy.[1]

2. SAME—MASTER AND SERVANT.

Nor did the fact that information concerning the accident came to the head tester and superintendent of mechanical parts from the attorney of the husband of the woman injured, and that they believed the story of the two testers, alter the right of defendant to notice or the obligation of plaintiff under the policy to advise such insurer: immediate notice meant, in the policy, a reasonable time to give such notice.

3. SAME—NOTICE.

As a matter of law three months was an unreasonable time to delay in notifying the insuring company of the claim of injury, its office being only 25 or 30 miles distant from plaintiff's.

4. SAME—WAIVER—KNOWLEDGE.

No waiver of the conditions of the contract of insurance could be inferred from the insurer's undertaking to defend the policy without asserting any objection of want of notice, and failing to set up that defense until the time of trial, when it first learned of the real facts and that plaintiff had had notice of the claim, also, where defendant was protected from the ground of contention by a

---

[1] On liability insurance covering automobiles, see notes in 44 L. R. A. (N. S.) 73, 51 L. R. A. (N. S.) 584, L. R. A. 1915E, 575.

As to when insured is charged with knowledge of accident so as to require him to give notice thereof as provided for in policy indemnifying against liability for personal injuries to others, see note in 16 L. R. A. (N. S.) 400.

clause in an agreement entered into with plaintiff to the effect that all acts done in the conduct of the litigation, etc., should be without prejudice to the rights under the policy.

Error to Oakland; Smith, J.   Submitted October 14, 1915.   (Docket No. 50.)   Decided January 3, 1916.

Assumpsit by the Oakland Motor Car Company against the American Fidelity Company, a foreign corporation, upon a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Oxtoby & Wilkinson*, for appellant.

*Patterson & Patterson*, for appellee.

STEERE, J.   In this action plaintiff recovered a judgment against defendant upon an automobile liability policy issued by the latter for the amount of damages plaintiff had paid in satisfaction of a judgment against it for personal injuries sustained by one Sarah Gregory.

Plaintiff is and was engaged in the manufacture of automobiles at Pontiac, Mich., and on January 16, 1912, secured from defendant, a corporation engaged in liability insurance business, an automobile liability policy which by its provisions agreed, amongst other things, to indemnify plaintiff against loss or liability on account of any bodily injuries accidentally suffered by any person during the testing of its automobiles before sale. Conditions in the policy interposed as a defense in this case are, so far as material, as follows:

"Condition 3. Upon the occurrence of an accident, the insured shall give immediate written notice thereof, with the fullest information obtainable, to the agent by whom this policy has been countersigned, or to the company's home office. If a claim is made on account

of such accident, the insured shall give like notice thereof with full particulars.

"Condition 4.   If thereafter any suit or legal proceedings are instituted against the insured, even if groundless, for damages or expenses incurred on account of an accident covered by this policy, the insured shall immediately cause to be delivered to the agent by whom this policy has been countersigned or to the company's home office every summons, notice, document, or other process served on him in such suit or legal proceedings, and upon receipt of such summons," etc.

The insurance company obligates itself to either settle or defend such suit and hold the insured harmless, when so notified.

The accident to Mrs. Gregory, for which she recovered damages, occurred on May 4, 1912, as the result of a horse driven by her and drawing a conveyance in which she was riding becoming frightened at one of plaintiff's automobiles driven before sale by one of its testers, for testing purposes, along a public highway on the outskirts of Pontiac.   In her action for personal injuries brought in the Oakland county circuit court she ultimately recovered a judgment against plaintiff herein for $1,500, with costs, which the latter paid, and thereupon demanded indemnity from defendant under its liability policy.   Payment was refused for the reason that timely notice of the accident was not given defendant as required by the policy. This action was thereupon instituted, and judgment recovered herein as before stated.

Defendant pleaded and claimed upon the trial that at the time of the accident in question plaintiff did not give it immediate notice of either the accident or Mrs. Gregory's claim, although it had knowledge of the same shortly thereafter, and while both testers involved in it were still in plaintiff's employ; and the first notice of the affair given by plaintiff to defendant was after suit had been commenced, on August 15, 1912, at which

time the tester operating the car which frightened Mrs. Gregory's horse had left plaintiff's employ, and his whereabouts become unknown, and as a result of plaintiff's neglect to promptly notify defendant the latter was prejudiced and deprived of the testimony of a most important and material witness for the defense in the *Gregory Case,* by reason of which breach of conditions of said policy defendant was released from liability. Whether notice was given within reasonable time after the accident occurred was submitted to the jury as a question of fact; while defendant urged and moved by timely application that, under the undisputed evidence, it should be disposed of by the court as a matter of law, and a verdict directed in its behalf. Therefore the question for determination by this court is whether, as matter of law, under the undisputed facts, notice was given in compliance with the conditions of the policy heretofore quoted.

At the time of this accident Emmet L. Page was plaintiff's chief inspector of mechanical parts, and it was one of his duties to supervise the testers. He was over the head tester, said to be a man by the name of Smith, who was directly in charge of the testers with authority to hire and discharge them. The testers were given numbers which they were required to wear conspicuously upon their clothing while on duty. Two of the testers, named Briggs and Wilson, numbered, respectively, 8 and 20, were out testing cars on that day, and it was one of them who frightened Mrs. Gregory's horse, although neither reported any such incident, and both subsequently denied it. Plaintiff's rules for employees connected with its testing department, under the head of "Accidents," contained, amongst other things, the following:

"All accidents, regardless of nature or seriousness, shall be reported in detail to the head tester immediately."

Although not reported by those under him, the head tester learned of this accident, shortly after it occurred, from Page, to whom it was reported by an attorney whom Mrs. Gregory's husband consulted and retained. The attorney called Page to his office by telephone, there told him of the claimed accident, and that Gregory had been in to see them regarding the injury resulting to his wife from it; stated that he was very much worked up, and something would have to be done by way of settlement, and related to Page the alleged circumstances of the accident, to the extent at least, as Page admitted, of the time, the highway on which it occurred, and the numbers of the cars or testers, stating Gregory thought they were Oakland motor test cars and the numbers were 8 and 20. Page testified it was "put up" to him that some one had been thrown out of a carriage, and "claimed it was the negligence of either of these two tester 8 and 20;" that on receiving this notice he investigated, referring the matter to Smith the head tester, and they together interviewed Briggs and Wilson, testers Nos. 8 and 20, whom they ascertained were out on the highway where it was reported the accident occurred on that afternoon, telling them what was claimed, but "both denied anything about any horse being scared," and denied that there was an accident. Page then visited the attorney's office and reported he had investigated the matter, and the testers denied having or causing any accident that day.

Neither Page nor Smith made any report of this claim of accident or of their investigation to any of their superiors in the company. Page's excuse for this is that he was on very friendly terms with the attorney, whom he had previously helped to elect prosecuting attorney, and supposed he had taken the matter up in that capacity, and that the attorney told him in their last interview, if anything turned up further, he

would let him know. He admits the attorney made no representations that he was acting officially, does not deny he said something would have to be done as to a settlement, and, when asked if he made his investigation by virtue of his position, replied:

"I was doing so for the benefit of the Oakland Motor Car Company and the satisfaction of the prosecuting attorney."

Smith, as head tester, was the person designated by the rules of the company as the one to whom accidents in that department should be reported, and Page was over him as inspector and superintendent of mechanical parts. Both had notice of this accident and claim from the attorney of the injured party within two or three days after the event, with data as to time, place, and parties. It was told to Page and referred by him to Smith, although they together made such investigations as they deemed advisable. If their knowledge was knowledge of the corporation, their reasons or excuses for not reporting the matter to some other department or superior officer of the company is of no importance, as affecting defendant's rights.

Plaintiff, a corporation organized as an artificial person and recognized as having a legal entity, is in itself unavoidably destitute of all sense of perception and knowledge, except as vicariously possessed and exercised for it by the natural persons composing or representing it. It could only have notice or knowledge of this accident as they came to some officer, agent or employee. Both Page and Smith held in its employ positions of trust and responsibility, with the duty of supervising and directing the conduct and work of subordinates. The company itself by its rules selected and designated Smith as the person to represent it in receiving from those under him notice of accidents. Page was over Smith in a yet more impor-

tant and responsible posi ion, as a superintendent of mechanical parts with his office on the same floor as the general manager and factory superintendent, who had immediate supervision over him.    The controller upon whom process was served in the *Gregory Case* stated Page was not directly under him, and he could not tell any more about his duties than that "he was in charge of inspection, whatever that means."    This case does not involve the question of the knowledge of the testers, which, in violation of the rules, they kept to themselves and denied.    It may be conceded their unreported knowledge would not bind the company, but the men who received the notice through such ominous sources as the husband of the injured party and the attorney he had consulted were superior agents of plaintiff, delegated to assume responsibility, think for others under them, and exercise judgment in the performance of their duties.

In *Northwestern Telephone, etc., Co.* v. *Casualty Co.*, 86 Minn. 467 (90 N. W. 1110), a workman was caught by caving earth while digging a hole for a telephone pole, and extricated without indications at the time of any serious results.    The foreman in charge made no report of the accident to the company.    In an action upon a policy containing conditions similar to those under consideration the court said of the requirement for notice:

"Having contracted to furnish it, respondent's foremen and men in charge of work when an accident happens are the company's representatives and agents for that purpose, and the duty rests upon them to report to the proper officers of the company.    In this case the foreman had knowledge of the accident, but failed to report it.    Having knowledge of the accident, he was bound to exercise his judgment and determine whether it was of sufficient importance for the basis of a claim in damages, and, having concluded it was not, the company was bound by his decision."

190 Mich.—6.

See, also, *Woolverton* v. *Fidelity & Casualty Co.*, 190 N. Y. 41 (82 N. E. 745, 16 L. R. A. [N. S.] 400), where the subject is reviewed and the same rule declared.

Notice to Page and Smith was notice to the company, and the fact that in exercising their judgment they decided to believe the testers' denial, or for any other reason concluded the claim was not of sufficient importance to require further attention, does not relieve plaintiff. It was bound by their decision and nonaction. Defendant received no notice of either an accident or claim until over three months later.

The conditions of the policy required "immediate written notice" of both. The rule is well settled that this is to be construed as meaning within a reasonable time after plaintiff has learned of the accident or claim, provided he exercised reasonable diligence to acquire such information; for the contract imposed upon him the duty of so regulating his business as to ordinarily be advised with reasonable promptness of any accident occurring in its conduct.

"The word 'immediately,' although in strictness it excludes all mean times, yet, to make good the deeds and intents of parties, it shall be construed such convenient time as is reasonably requisite for doing the thing." 9 Am. & Eng. Enc. Law (1st Ed.), p. 931 and note.

This policy was signed by defendant's State agent and issued from Detroit, where it had an office and agency. Plaintiff had defendant's Detroit address, and mailed the notice it finally sent there. It was but 25 or 30 miles between the two cities, with daily mails, or oftener, and all modern means of quick communication between them. After notice and knowledge of this accident by plaintiff at Pontiac, it cannot be seriously contended that three months was a reasonably requisite time in which to advise defendant's office in

Detroit, under a condition precedent in a policy requiring it to be done "immediately."

No disputed questions of fact bearing on reasonableness of the delay are involved. Plaintiff's only explanation or excuse for the delay is that it had no knowledge, because certain of its officials who would have served the notice were not advised, which under the undisputed facts cannot be sustained as a proposition of law. What is a reasonable time must be determined as a question of law when the facts are not in dispute. *Foster* v. *Fidelity & Casualty Co.,* 99 Wis. 447 (75 N. W. 69, 40 L. R. A. 833) ; *Travelers' Ins. Co.* v. *Myers & Co.,* 62 Ohio St. 529 (57 N. E. 458, 49 L. R. A. 760) ; *Baker* v. *Insurance Co.,* 124 Ind. 490 (24 N. E. 1041) ; *Edwards* v. *Insurance Co.,* 75 Pa. 378.

By the conditions in this policy, irrespective of whether any claim was then made for damages, it became the duty of plaintiff to notify defendant of an accident at once, that the latter might promptly investigate the circumstances and take such steps as were found advisable in order to settle or prepare for any defense which it might ultimately be called upon to make. Whenever a claim for damages became known to plaintiff it was also required to notify defendant immediately of the fact, in that respect differing in phraseology from the policy under consideration in *Grand Rapids Electric Light, etc., Co.* v. *Fidelity & Casualty Co.,* 111 Mich. 148 (69 N. W. 249), cited by plaintiff, which was construed by this court as requiring notice only upon both happening of an accident and receipt of notice of a claim made on account of it, following *Anoka Lumber Co.* v. *Fidelity & Casualty Co.,* 63 Minn. 286 (65 N. W. 353, 30 L. R. A. 689). The policy involved here is not susceptible of that construction.

Attention is called in plaintiff's brief, with citation of authorities indicating a claim of waiver or estoppel,

to the fact that the insuring company took charge of the defense in the *Gregory Case* and did not raise the point of want of notice until that case was on trial. It appears that defendant did take up the burden of defense under assurances and in the belief that plaintiff first learned of the matter when summons was served upon it, and only learned the facts heretofore related, as to previous knowledge of plaintiff's agents, when they were brought out upon the trial, whereupon counsel raised the objection and insisted that defendant had been both misled and handicapped in fact by the long delay in notifying it, during which time it had no opportunity to see the parties and investigate before litigation was initiated, and the tester Briggs, who, as Mrs. Gregory claimed, drove the offending automobile, had left plaintiff's employ and afterwards disappeared, for which reasons counsel proposed to turn the defense over to attorneys of the motor car company and retire from the case. Assuming the burden of such defense would not constitute a waiver so long as defendant had no knowledge of plaintiff's previous information and forfeiture of its rights under the policy (*National Construction Co.* v. *Insurance Co.,* 176 Mass. 121 [57 N. E. 350]) ; but whatever questions this situation might otherwise present, we are satisfied defendant is fully protected by an agreement thereafter entered into, which provides, after full recitals :

"That all acts of the parties hereto with reference to the conduct of the defense of said [Gregory] case shall be considered as done without prejudice to their respective rights under said automobile policy."

Contracts of insurance against the consequences of the insured's negligence are, as a rule, limited, and but partial. Conditions for notice of the event insured against, similar to those under consideration, are common in policies for most kinds of insurance. They are

nothing new or misleading. Such stipulations, when contained in the policy, are recognized as valid, and must be complied with before recovery can be had, if within the power of the insured. Plaintiff's right to indemnity flows from this policy, constituting the written agreement between the parties which they voluntarily entered into and of which these conditions form a part. Failure by plaintiff to observe the condition precedent of this executory contract was failure to perform the contract on its part. It first breached the contract, and by such nonperformance it released the other contracting party. In order to maintain this action, it was bound to give notice of both the accident and claim for damages as and when by the terms of the contract it agreed to do so.

For the foregoing reasons, we are constrained to conclude that, as a matter of law, under the undisputed evidence, plaintiff failed to give timely notice of the accident and claim in compliance with its agreement as expressed in the conditions of this policy under which recovery is sought, and a verdict should have been directed for defendant.

The judgment is therefore reversed, without a new trial.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.