TADEUS VASARIS *vs.* NATIONAL LIBERTY INSURANCE COMPANY OF AMERICA.

Suffolk.   February 3, 1930. — June 30, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Insurance*, Fire: motor vehicle, waiver of notice.  *Agency*, Scope of authority.  *Waiver*.

A policy of insurance issued to a corporation and insuring against loss by fire its interest as vendor under various contracts of conditional sales of automobiles, and stated "to cover the interest of Lessor and Lessee, Vendor and Vendee, Loss, if any, to be payable to the" corporation, was not a "fire insurance policy in the standard form prescribed by" G. L. c. 175, § 99; and, therefore, the provisions of G. L. c. 175, § 102, which forbid the insurer to rely in defence upon failure to make the sworn statement of loss mentioned in a standard policy, did not apply in an action by a conditional vendee upon the policy.

While the law is settled that a definite refusal to pay a claim made under an insurance policy, which refusal is stated to be upon grounds other than the failure to meet certain required conditions, excuses failure or delay in complying with those conditions, such refusal to have that result must be made by some one who has authority to bind the insurer.

Mere evidence that an employee of an insurance company had authority to adjust one claim for loss under a policy of the company falls far short of justifying a finding that, as to another claim, he was authorized on behalf of the company to refuse payment, or to waive conditions of the policy.

CONTRACT on the fire insurance policy described in the opinion. Writ dated October 25, 1928.

In the Superior Court, the action was tried before *Morton*, J. Material evidence and exceptions saved by the defendant are stated in the opinion. There was a verdict for the plaintiff in the sum of $899. The defendant alleged exceptions.

*C. C. Cabot*, for the defendant.

*C. J. Kalinauskas*, (*L. A. Rogers* with him,) for the plaintiff.

WAIT, J. The plaintiff, on May 14, 1927, purchased an automobile on a contract of conditional sale from the L. A. W. Acceptance Corporation of Brockton. On the day of the purchase he paid $700 in cash and gave twelve notes for $166.33 each for the balance of the purchase price. He subsequently paid five of these notes. The L. A. W. Acceptance Corporation held a policy of insurance issued by the defendant which insured its interest in all automobiles sold by it on conditional sale against loss by fire, to become a risk under the policy as soon as the lease agreement was accepted by the corporation. The intent of the policy was "to cover the interest of Lessor and Lessee, Vendor and Vendee, Loss, if any, to be payable to the L. A. W. Acceptance Corporation of Brockton, Massachusetts." In case of loss it provided that "the assured shall give forthwith notice thereof in writing" to the insurer, and within sixty days render a signed and sworn statement to the insurer stating designated matters. It also provided that "This Company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement act, or proceeding on its part relating to the appraisal, or to any examination herein provided for." Furthermore, it set out: "This policy is made and accepted subject to the

provisions, exclusions, conditions and warranties set forth herein or endorsed hereon, and upon acceptance of this policy the assured agrees that its terms embody all agreements then existing between himself and the Company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this Company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached."

The corporation was authorized to issue to a conditional vendee a certificate showing that his interest in the automobile was insured under the "master policy" held by it. Such a certificate was sent to the plaintiff. It stated that the open policy was made for the benefit of the several parties in interest in the automobile and the notes made in connection with the purchase, with loss payable first to the holders and indorsers of any unpaid notes to the extent of their interests and the remainder, if any, "payable to you as the purchaser and maker of the notes as set forth in the policy." It set out that "All terms and conditions of this insurance are stated fully in the policy, which is in our possession." An abstract of some of the principal provisions was printed on it. At the bottom of the certificate was printed: "In the event of loss notify Hendrick Insurance Agency, 106 Main Street, Brockton, Mass." Among the provisions printed on the back was: "It is a condition that the insurance shall be null and void . . . (e) Unless written notice of loss is given immediately after date of loss and unless sworn proof of loss is filed within sixty days from the date loss occurred."

On September 24, 1927, the automobile was almost entirely destroyed by fire. The L. A. W. Acceptance Corporation filed proper notice and sworn statement and gave due proof of loss, and, on March 29, 1928, was paid $800, for which it gave a release to the defendant. There was testimony that an attorney for the plaintiff (who was himself also owner of a car damaged by the fire) on the morning after the fire spoke by telephone with one Hendrick of the insur-

ance agency.  Subject to exception, he was allowed to testify that Hendrick told him not to worry about the notices on the attorney's and the plaintiff's cars, that he would take care of the notices and would inform him later.  In the middle of the following week, he again spoke with Hendrick and, as a result, saw one Good who adjusted the loss for the insurer on the attorney's car, and who told him that question had arisen in regard to the cause of the fire, that an inquest was to be had, and that after it had been held, the defendant would "talk business on the question of settlement" on both the witness's car and the plaintiff's car.  Within two or three weeks after the fire, and about two weeks after the inquest, Good stated to the witness, in the presence of Hendrick, in regard to the plaintiff's car, that "under the circumstances he wouldn't pay anything, or words to that effect."

No written notice was given and no sworn statement was furnished the insurer by the plaintiff; and no payment has been made for the loss except to the L. A. W. Acceptance Corporation.  The trial judge refused to direct a verdict for the defendant and to give four requests for rulings asked by the defendant.  Exceptions were claimed to these refusals. No exceptions to the charge were taken.  The judge, in substance, instructed the jury that if authorized agents of the defendant immediately after the fire were notified though not in writing of the existence of the fire, of the facts in regard to the fire, and that there was a loss, and, within a short time, the plaintiff was told by one of these agents in the presence of the other that under no circumstances would the loss be paid, it was, as matter of law, a waiver of any written notice; but that the jurors must be satisfied that Good was authorized to determine whether or not an adjustment would be made.  If they were satisfied that there was a waiver, the plaintiff could recover.  The jury found for the plaintiff.

The defendant presses only the exception to the refusal to direct a verdict:  contending that there was no sufficient evidence of the authority of any agent to waive the written notice and the sworn statement required by the

policy and made conditions of payment, and that, in the absence of a valid waiver, it was entitled to a directed verdict.

The policy was not a "fire insurance policy in the standard form prescribed by section ninety-nine" of G. L. c. 175; and, therefore, the provisions of G. L. c. 175, § 102 which forbid the insurer to rely in defence upon failure to make the sworn statement of loss mentioned in a standard policy, do not apply here. *Paulauskas* v. *Fireman's Fund Ins. Co.* 254 Mass. 1. Unless precluded by conduct which excused compliance with the conditions of notice and statement, the defence of non-compliance is open. The law is settled that a definite refusal to pay stated to be upon grounds other than the failure to meet certain required conditions, excuses failure or delay in complying with those conditions. *Martin* v. *Fishing Ins. Co.* 20 Pick. 389. *Priest* v. *Citizens' Mutual Fire Ins. Co.* 3 Allen, 602. *Searle* v. *Dwelling House Ins. Co.* 152 Mass. 263, 265. *Royal Ins. Co.* v. *Martin,* 192 U. S. 149. But the refusal must be made by some one who has authority to bind the insurer. *Larner* v. *Massachusetts Bonding & Ins. Co.* 238 Mass. 80. Especially is this true where, as here, by its express terms the policy declares that "no officer, agent or other representative of this Company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto." *Paulauskas* v. *Fireman's Fund Ins. Co. supra,* at page 3. *Epstein* v. *Northwestern National Ins. Co.* 267 Mass. 571, 577. Here there is no evidence of authority to waive either in Good or in Hendrick other than evidence that Good acted as adjuster and settled with the attorney for the loss upon his car. If we assume that their conduct might have excused the failure to give the written notice required by the policy, we think evidence that Good had authority to adjust one loss falls far short of justifying a finding that, in another case, he was authorized to refuse payment, or to waive conditions of the policy. The case is governed in principle by *Paulauskas* v. *Fireman's Fund Ins. Co. supra,* and *Rockwell* v. *Hamburg-Bremen Fire Ins. Co.* 212 Mass. 318, rather

than by anything said in *Shapiro* v. *Security Ins. Co.* 256 Mass. 358 and *Wholley* v. *Western Assurance Co.* 174 Mass. 263, which are distinguishable on their facts.

We need not consider the other exceptions. It follows that there was error in refusing to direct a verdict for the defendant, and entry must be made,

*Exceptions sustained.*