## PHELAN v. NEW AMSTERDAM CASUALTY CO.

### No. 2318.

District Court, D. Wyoming.
Jan. 16, 1934.

Walter Q. Phelan, pro se, and Edward B. Almon, both of Cheyenne, Wyo., for plaintiff.

C. R. Ellery and Bard Ferrall, both of Cheyenne, Wyo., and L. Ward Bannister and S. M. January, both of Denver, Colo., for defendant.

KENNEDY, District Judge.

This is a suit based upon a judgment recovered by plaintiff for the sum of $5,000 and costs in the District Court of Laramie county, Wyo., against one Walter Westbrook, growing out of an automobile accident in which plaintiff's intestate was killed by the car driven by the defendant Westbrook, he at the time carrying an automobile accident insurance policy in the defendant company. An answer was interposed, among other things asserting the defense that the insured had failed to comply with the terms of the policy in giving notice of the accident to the defendant. An appropriate reply was filed and the case went to trial to the court, a jury having been expressly waived.

The plaintiff introduced his evidence and rested. The defendant thereupon elected to introduce no testimony and likewise rested. The court took the case under advisement and trial briefs have been submitted.

A synopsis of the facts necessary for the determination of the issues involved is as follows: In an automobile accident which occurred on the 10th of December, 1931, in which Walter Westbrook was driving the automobile, one Edward Burke was killed. At the time said accident occurred Westbrook carried an automobile accident insurance policy in the defendant company which had been formerly issued to Arthur E. Barwick and transferred by written consent to said Westbrook, which policy was in force and effect at the time the accident occurred. Thereafter, some time in June, 1932, letters of administration upon the estate of said Edward Burke were issued to the plaintiff Phelan, who duly qualified as such administrator and the suit for damages based upon the alleged negligence of Westbrook was instituted by the administrator and a judgment rendered thereon for the sum of $5,000 and costs on December 1, 1932, in the District Court of Laramie county, Wyo. No appearance or defense was made to said suit by Westbrook or the defendant company and the judgment was taken as by default. On December 3, 1932, execution was issued upon said judgment and returned "nulla bona" by the sheriff, said Westbrook being insolvent. No notice of the accident of any kind was ever given by Westbrook to the defendant company. Some time in May, 1932, one Edward B. Almon, purporting to act in the capacity of attorney for the heirs of the deceased Westbrook, communicated a notice of the accident to the local agent of the defendant company and thereafter a notice of claim was filed with said company, followed by service of a copy of the summons and petition in said cause. On December 8, 1932, this suit was commenced in the state court and removed here. The portions of the policy pertinent to the issues here involved, are:

"4. Subject to all the provisions, exclusions, conditions and warranties contained in this Policy, loss, if any, payable, as interest may appear, to Assured."

Under section 1 of the policy is the following:

"In consideration of the warranties and the premium hereinbefore mentioned, and subject to the Terms, Provisions and Conditions of Section One of this Policy, the New Amsterdam Casualty Company (Hereinafter called 'the Company') does hereby insure * * * *"

"9. The bankruptcy or insolvency of the Assured shall not release the Company from any payment otherwise due hereunder if, because of such bankruptcy or insolvency, an execution on a judgment against the Assured is returned unsatisfied, the judgment creditor shall have a right of action against the Company to recover the amount of said judgment to the same extent that the Assured would have had to recover against the Company had the Assured paid the judgment."

"Subject to the Following Conditions:"

"B. The Assured shall give immediate written notice of any accident and like notice of any claim or suit resulting therefrom, together with every summons or other process, to the Executive Office of the Company at Baltimore, Maryland, or to its authorized representative."

█ The question presented as the principal issue in the cause is, whether or not in view of the fact that the insured Westbrook failed to give to the defendant notice of the accident under the terms of his policy, the defendant is thereby relieved from liability upon plaintiff's judgment. This point has been a fruitful source of judicial expression for a considerable period of time. It has been considered by several of the Circuit Courts of Appeals. In St. Louis Architectural Iron Co. v. New Amsterdam Cas. Co., 40 F.(2d) 344, at page 346 (C. C. A. 8), Judge Booth, speaking for the court, says:

"One contention of appellant is that the liability of the appellee under the indemnity insurance policy was not affected by the failure to give immediate written notice of the accident in accordance with condition B, because there was no provision of forfeiture

in the policy for failure to give the notice. We are of opinion, however, that such a forfeiture provision is not necessary where, as in the case at bar, the language of the contract between the parties plainly makes the giving of the notice of the accident a condition precedent to liability on the part of the insurance company."

A further expression of the rule, together with the reasons underlying the same, is enunciated by the same court, with Judge John B. Sanborn speaking, in Clements v. Preferred Acc. Ins. Co., 41 F.(2d) 470, at page 472, 76 A. L. R. 17 (C. C. A. 8):

"The provision of the policy requiring immediate notice was a valid provision, and substantial compliance with it was a condition precedent to the right to recover under it. See St. Louis Architectural Iron Co. v. New Amsterdam Casualty Co. [C. C. A.] 40 F.(2d) 344, and cases therein cited.

"In Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 14 S. Ct. 379, 381, 38 L. Ed. 231, the Supreme Court of the United States said: 'The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made.'

"In the policy before us, the insurer contracted for immediate notice in case of an accident as a result of which it might become liable under the policy. This case well illustrates the importance of such a provision to it. The evidence indicates that at the time of the accident neither the appellant nor David Newell considered her injuries serious. That was apparently the reason that nothing was said by David to his father about the accident. The appellant made no claim and consulted no attorneys with reference to her claim for more than a year. It is probable that if prompt notice of the accident had been given, as required by the policy, the claim of the appellant would have been settled without a lawsuit and at a small expense.

In any event, the accident would have been promptly investigated, the cause of it determined, evidence procured, and the nature and extent of the injuries to the appellant ascertained. It is a matter of common knowledge that with lapse of time witnesses disappear. The difficulty of establishing a defense, if one exists, is greatly increased, and the seriousness of injuries becomes either increased or exaggerated. It frequently happens that injuries which may at first be fully compensated for by a small settlement, to the satisfaction of all concerned, later become complicated by mental or nervous disorders, either real or imaginary, which can only be cured by a large verdict. The hazard of insuring against liability for an accident of which an insurer is entitled to immediate notice is an entirely different risk than insuring against such liability where notice may be given at the end of twenty-three months. The premium charged is or should be measured by the hazard assumed. The premium on an insurance contract such as the one involved here which requires prompt notice ought to be one which would be entirely insufficient to carry a policy which provided that notice should be deemed sufficient if given within two years from the time of the accident. This merely illustrates the importance of giving effect to the terms of the contract of insurance substantially as they are agreed to."

Some of the state courts have adhered to the same rule. In Hagstrom et al. v. American Fidelity Co., 137 Minn. 391, 163 N. W. 670, at page 671, it was stated:

"The court below construed the provision of the contract above quoted as one requiring the service of the notice within a reasonable time, and submitted the question of reasonableness to the jury. That view of the contract is in harmony with the authorities, including our own decisions. Fletcher v. Ins. Co., 79 Minn. 337, 82 N. W. 647; Ermentrout v. Girard Fire & Marine Ins. Co., 63 Minn. 305, 65 N. W. 635, 30 L. R. A. 346, 56 Am. St. Rep. 481; 24 Harvard L. Rev. 580. But we think the question whether the service was made within a reasonable time, the facts not being in dispute, was one of law, and should have been disposed of accordingly.

"The object and purpose of this provision of the policy was to afford the company an opportunity to make an early and prompt investigation into the claim of loss or injury, not only to learn and ascertain the facts with respect thereto, but also to protect itself from a possible fraudulent and fictitious

claim. If there be long delay, this purpose of the contract may be wholly defeated, and the insurer deprived of the right to early information in reference to the merits of the claim. The facts may be concealed, witnesses scatter and disappear, rendering a delayed investigation without substantial results. We have heretofore held that the requirement of notice is of the essence of the contract, a condition precedent, and if the delay be such as to defeat the purpose of the contract, and deprive the insurer of the opportunity of an early investigation into the loss, there is a breach of the contract by the insured which will forfeit his right of indemnity."

In Friedman v. Orient Ins. Co., 278 Mass. 596, 180 N. E. 617, at page 618, it is said:

"Immediate notice of the loss in writing, required by the terms of the contract, was a condition precedent to recovery in this action. The burden of proving performance, or excuse for nonperformance, was on the plaintiff. Hatch v. United States Casualty Co., 197 Mass. 101, 105, 106, 83 N. E. 398, 14 L. R. A. (N. S.) 503, 125 Am. St. Rep. 332, 14 Ann. Cas. 290; McCarthy v. Rendle, 230 Mass. 35, 119 N. E. 188, L. R. A. 1918E, 111; Wilcox v. Massachusetts Protective Association, Inc., 266 Mass. 230, 165 N. E. 429; Vasaris v. National Liberty Ins. Co. of America, 272 Mass. 62, 66, 172 N. E. 99; Hannuniemi v. Carruth, 278 Mass. 230, 179 N. E. 597, and cases cited."

In Gifford v. New Amsterdam Casualty Co. (Iowa) 248 N. W. 235, at page 236, is the following language:

"That notice was given as soon as practicable under the facts and circumstances existing at the time of the accident is not open to doubt. It then becomes a question whether it was given within a reasonable length of time, under all the facts and circumstances."

In Gullo v. Commercial Casualty Ins. Co., 226 App. Div. 429, 235 N. Y. S. 584, at page 588, in a decision by the Appellate Division, the following significant language is found:

"The court explicitly charged the jury that, if no such conversation occurred, but that there was simply a delay from the 18th day of February to March 3d, without any reason for delay in sending the notice, then the jury could not find for the plaintiff.

"We agree with the trial court that the written notice given on March 3d, in the absence of such conversation, would not be immediate."

In Sherwood Ice Co. v. United States Casualty Co., 40 R. I. 268, 100 A. 572, at page 574, the opinion carries an analysis of certain cases in which delays without excuse were held to be breaches of the condition of the policy to give immediate notice and prohibiting recovery:

"On the other hand, where the facts were not in dispute, and the delay was unexcused, comparatively brief periods of delay have been held as a matter of law to be a breach of the condition to give immediate notice. See Smith, etc., Mfg. Co. v. Travelers' Insurance Co., 171 Mass. 357, 50 N. E. 516, where there was a delay of 27 days due to forgetfulness; Foster v. Fidelity & Casualty Co. of New York, 99 Wis. 447, 75 N. W. 69, 40 L. R. A. 833, with a delay of 29 days after knowledge of the facts; Rooney v. Maryland Casualty Co., 184 Mass. 26, 67 N. E. 882, with a delay of 23 days after the accident; Railway Passenger Assurance Co. v. Burwell, 44 Ind. 460, where there was a delay of only 6 days; Myers v. Maryland Casualty Co., 123 Mo. App. 682, 101 S. W. 124, with a delay of 6 weeks; Oakland Motor Co. v. American Fidelity Co., 190 Mich. 74, 155 N. W. 729 (1916) with a delay of 3 months; and Travelers' Insurance Co. v. Nax, 142 F. 653, 73 C. C. A. 649, there having been a delay of 139 days after the accident.

"In the present case there was a delay of 142 days in giving the notice to the defendant. The plaintiff knew of the accident on the day of its occurrence, March 15, 1913, and showed its understanding of the condition of the policy now in question, and its ability to comply with it by mailing that day a notice of the accident to another company."

Citations from various states of a similar nature might be added, but the foregoing are sufficient to demonstrate the general trend of the rule in construing policies of a similar nature embodying the "immediate notice" clause.

Some courts have adopted the rule that unless there is a forfeiture clause based upon the failure to give notice, such failure will not be sufficient to prevent recovery, but the cases generally and certainly those in the federal courts have not so held, but base the rule upon the theory of the breach of a condition precedent and hold it sufficient to avoid liability, as specifically stated in the St. Louis Architectural Iron Co. Case, supra.

Applying this rule to the facts in the case at bar, it is evident that in construing the "immediate notice" feature of the insurance contract, there was no compliance by the insured at any time and the first notice given on behalf of the estate of plaintiff's intestate was some five months after the ac-

cident occurred and no excuse given for the delay except if the injured party or in this case his estate, had any rights under the policy independent of those of the insured, such time of serving notice would be deferred for a considerably longer period on account of the exigencies of the occasion. It must therefore be held that so far as Westbrook, the insured, was concerned, the failure to give notice within a reasonable time breached the policy and would prohibit him from any recovery thereunder.

■ Notwithstanding this feature of the case, the plaintiff contends that he, as administrator of the deceased person who was killed in the accident, nevertheless has a right by virtue of the judgment which he may enforce against the defendant, and regardless of the breach of condition on the part of the insured. This phase of the question has also been given attention by the courts, whose decisions are perhaps not entirely in harmony. As a general proposition it has been stated that a third party injured as in the case at bar has the same rights and is under the same disabilities as the insured would be in attempting to recover judgment for indemnity against the insurance company. This thought is expressed in Metropolitan Casualty Ins. Co. v. Colthurst, 36 F.(2d) 559, at page 561 (C. C. A. 9), as follows:

"While not all legally identical with the case before us, in principle and logically, we think, these cases lend support to the appellant's contention that the injured person is under the same disability to which the insured would be subject should he pay the judgment and seek indemnity under the policy. Of course that does not necessarily mean that by agreement or collusion the insured and insurer may defeat the claim or prejudice the rights of the injured party, but the record here presents no consideration of that character."

In United States Fidelity & Guaranty Co. v. Wyer, 60 F.(2d) 856, at page 858 (C. C. A. 10), Judge Cotteral, speaking for our Circuit Court of Appeals, says:

"Wyer was not a party to the insurance contract. By the terms of the policy, he had only the right of Buffalo to recover, in case of his insolvency or bankruptcy and an execution unsatisfied against him, if the latter would have had that right on paying the judgment. Clements v. Preferred Accident Insurance Co. (C. C. A.) 41 F.(2d) 470, 76 A. L. R. 17; Metropolitan Casualty Insurance Co. v. Colthurst (C. C. A.) 36 F.(2d) 559; Royal Indemnity Co. v. Morris (C. C. A.) 37 F.(2d) 90; Hermance v. Globe Indemnity Co., 221 App. Div. 394, 223 N. Y. S. 93; Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443; Weatherwax v. Royal Indemnity Company, 250 N. Y. 281, 165 N. E. 293; Seltzer v. Indemnity Ins. Co., 252 N. Y. 330, 169 N. E. 403."

In New Jersey Fidelity & Plate Glass Ins. Co. v. Love, 43 F.(2d) 82 (C. C. A. 4), the subject is more fully elaborated upon in the text of the decision found at page 85, as follows:

"It is argued in this court, however, that under what is termed the insolvency clause of the policy (hereinabove set forth), which provides that an action may be brought by the injured person or her personal representative in case of death, a cause of action arose directly to Mrs. Lowe's personal representative which he could maintain without complying with the conditions of the policy. The insolvency clause was evidently framed to avoid an injustice arising in the case of an insolvent assured. Because of his insolvency, an assured who had paid premiums during the life of the policy might be deprived of the benefit for which he contracted. The insurance company would be relieved of liability under its policy and the injured party would not get redress. Under the insolvency provision of the policy, the fact that the assured has suffered no loss because of previous insolvency does not relieve the company of liability. It was not intended to relieve the injured party from complying with the terms of the policy. The insolvency clause itself says in plain terms that the personal representative of the injured party may maintain an action 'under the terms of the policy.' If the injured party can dispense with one of the terms, she can dispense with any of them; but our view is that she must comply with its terms and conditions and if she does not do so, she forfeits her rights under the policy, the same as the assured. It is said, however, that this gives an opportunity for collusion and fraud between the assured and the insurance company to defeat the rights of the injured party. There is, however, the same opportunity for collusion and fraud between the assured and the injured party to defraud the insurance company. But these considerations cannot affect the question. The point is that the parties have made their contract in plain and unambiguous language, and that by the provisions of that contract all of its terms must be complied with before there can be a recovery either by the assured or the injured party."

In Clements v. Preferred Acc. Ins. Co., 41 F.(2d) 470, at page 473, 76 A. L. R. 17 (C. C. A. 8), heretofore cited, the court says:

"The appellant had the right to recover against the company upon the execution issued upon her judgment against David Newell being returned unsatisfied, if David Newell would have had that right in case he had paid the judgment. United States Casualty Co. v. Breese, 21 Ohio App. 521, 153 N. E. 206; Weiss v. New Jersey Fidelity & Plate Glass Ins. Co., 131 Misc. 836, 228 N. Y. S. 314; Lorando v. Gethro, 228 Mass. 181, 117 N. E. 185, 187, 1 A. L. R. 1374. In the last case, the Supreme Court of Massachusetts construed a state statute which permitted an injured person, after having obtained judgment against an insured, to sue the insurer direct, and provided that, in the event of loss, the liability of the insurance company should become absolute. The court held that the statute meant only that, in an action by the injured person against the insurer, the liability of the insurer in so far as the amount of the loss was concerned should not be in dispute. The court said: 'Whatever may be their degree of financial responsibility, the clause does not mean that the other valid conditions of a contract of casualty insurance are abrogated. Whatever conditions are imposed by that contract, whether as to written notice by the insured to the insurer of any accident and claim, the delivery to the insured of summons in case of action instituted, as to time of bringing action on the policy, or otherwise, are left in full force, unaffected by this clause.'

"It is apparent that, since the insurer here did not receive the notice to which it was entitled under the terms of its policy, and since it was thereby relieved of its liability under the policy to David Newell, who alone was liable to the appellant, the appellant could not recover in this action. It therefore becomes unnecessary to consider any other question."

In Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, at pages 368, 369, 72 A. L. R. 1443, in a decision of the New York Court of Appeals, spoken by Judge Cardozo, now an Associate Justice of the United States Supreme Court, in discussing a breach of a contract of insurance by the insured, it is said:

"The argument is made that the effect of section 109 of the Insurance Law is to create an original obligation in favor of the injured claimant for the amount of any judgment recovered against the holder of the policy without reference to any breach of condition as between insurer and assured. We see no basis for such a ruling. Cf. Schoenfeld v. New Jersey Fidelity & Plate Glass Ins. Co., 203 App. Div. 796, 800, 197 N. Y. S. 606; Roth v. National Automobile Mut. Casualty Co., 202 App. Div. 667, 669, 195 N. Y. S. 865; Lorando v. Gethro, 228 Mass. 181, 185, 186, 117 N. E. 185, 1 A. L. R. 1374. By express provision of the statute, the action is to be 'maintained by the injured person * * * against such corporation under the terms of the policy.' If the terms could be disregarded, insurers would be helpless to defend themselves against chicanery or covin. They might then be held, though there had been neither notice of the claim nor opportunity reasonably prompt to investigate the merits. Cf. Lorando v. Gethro, 228 Mass. 181, 185, 117 N. E. 185, 1 A. L. R. 1374.

"The plaintiff argues that a bankrupt holder of a policy, colluding with an insurer, could refuse to co-operate, and thus enable the insurer to cheat the statutory remedy. With equal force, the defendant can argue that a bankrupt assured could collude with a claimant to fasten upon the insurer a fictitious liability. The statute was prompted by a definite mischief. Cf. Lunt v. Ætna Life Ins. Co., 253 Mass. 610, 149 N. E. 660; Roth v. Nat. Auto Mut. Cas. Co., supra. Before its enactment, the insolvency of the assured was equivalent in effect to a release of the surety. The policy was one of indemnity against loss suffered by the principal, and loss to him there was none if he was unable to pay. The effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied. The cause of action is no less but also it is no greater. Assured and claimant must abide by the conditions of the contract."

See, also, Royal Indemnity Co. v. Morris (C. C. A. 9) 37 F.(2d) 90; Sheldon v. Bennett (Mass.) 184 N. E. 722; Peeler v. United States Casualty Co., 197 N. C. 286, 148 S. E. 261; Oakland Motor Co. v. American Fidelity Co., 190 Mich. 74, 155 N. W. 729; Hermance v. Globe Indemnity Co., 221 App. Div. 394, 223 N. Y. S. 93; Guerin v. Indemnity Ins. Co., 107 Conn. 649, 142 A. 268; and Coolidge v. Standard Accident Insurance Co., 114 Cal. App. 716, 300 P. 885.

There may be some variance in the court decisions growing out of (1) where the insurance is of a compulsory nature under state

law, or (2) depending upon the express wording of the policy governing the bankruptcy or insolvency of the insured and the rights of a third party growing out of such situation. In a number of cases where the insurance is of a compulsory nature, it is held to be for the benefit of the public as well as the insured, and in these cases provisions in regard to notice and the like, if present, are not strictly enforced, and yet in this type of cases it has been held that such a provision relating to deferred notice does not apply where the accident occurs outside of the state, in accordance with whose laws the policies are issued. Such a case is Doolan v. United States Fidelity & Guaranty Co.. 85 N. H. 531, 161 A. 39. It is manifest that the policy in suit here is not one taken out under any statute requiring compulsory insurance and therefore is to be distinguished from contracts of that class.

It remains to inquire as to whether or not the terms of the policy here are to be construed differently than those in the cited cases having a slightly different phraseology. In Meyer v. Iowa Mutual Liability Insurance Co., 240 Ill. App. 431, where the phraseology was almost identical with that in the policy here sued upon, it was construed as not entitling a third party to recover where there has been a breach of condition precedent in regard to giving notice. In New Jersey Fidelity & Plate Glass Ins. Co. v. Love, supra, the insolvency clause of the insurance contract providing for suit by a third party carried the term "under the terms of the policy." In the case at bar it will be noted that the wording is to the effect that the insolvency of.the insured shall not release the company from any payment otherwise due thereunder if because of such insolvency an execution or a judgment against the insured is returned unsatisfied, the judgment creditor shall have a right of action against the company to recover the amount of said judgment to the same extent that the insured would have had to recover against the company had the insured paid the judgment. Whether such a policy is to be distinguished in construction from one providing that the third party shall have a right of action in case of insolvency of the insured against the insurer "under the terms of the policy," is the final problem. In Ott v. American Fidelity & Casualty Co., 161 S. C. 314, 159 S. E. 635, 76 A. L. R. 4, a case upon which the plaintiff strongly relies, it was held that the language of the policy in the insolvency clause applied only to the amount of the recovery by the judgment creditor. It may be

noted in addition that in that case the policy was issued in accordance with the state law, taken out by a public carrier and requiring the policy to be filed with the highway commission. In the dissenting opinion, at page 638 of 159 S. E., 161 S. C. 314, is a very logical statement of the minority views concerning the construction of a policy with language such as is contained in the policy before us. It reads:

"The contention of the plaintiff practically is that the insurance company is absolutely bound by the judgment which he has recovered against the bus company, regardless of the fact that it was not a party thereto; that it cannot go behind the judgment and show that certain conditions contained in the policy have not been complied with, and that certain limitations of its liability also contained therein cannot be insisted upon. No such result is justified either under the statute or under the terms of the policy. The statute not only allows, but requires, the insertion of such conditions. and limitations as may be prescribed by the commission. The policy specifically limits the recovery by the injured person upon the judgment obtained by him against the bus company, 'to the same extent that the assured would have to recover against the company, had the assured paid the judgment.' Tried by this square, could there be any doubt but that, if the bus company had paid the judgment rendered against it and had then sued the company for reimbursement, it would have been bound by the conditions and limitations contained in the policy?

"It is suggested that the effect of the limitation 'to the same extent,' etc., is to limit the amount recovered on a judgment to $5,-000; if that be true, it was entirely unnecessary to add 'but in no event shall the liability of the company exceed the limits expressed in the policy.'

"It is insisted that the language of the quoted provision of the policy can have no other meaning than that a judgment creditor has the right to recover the amount of his judgment from the insurer; that by the provision in question the insurer contracted to pay to the injured person the amount of his judgment not exceeding the sum named. Such a construction ignores the condition that the judgment creditor shall have the same right to recover upon the judgment and to the same extent that the insured would have had to recover against the company had he paid the judgment; that limitation means nothing, if it does not mean that the injured

person suing upon his judgment can recover nothing if the insured under the circumstances would be deprived of the right to recover by a breach of the conditions of the bond or by reason of the limitations imposed upon such right."

Analyzing the insolvency clause of the policy here in issue, providing for a recovery in the event an execution upon a judgment against the assured is returned unsatisfied and giving the judgment creditor a right of action against the company, it seems to me that the last phrase should be given its true and logical meaning, such phrase containing the words, "to the same extent that the assured would have had to recover against the company had the assured paid the judgment." I am of the opinion that this phrase should not be construed to refer only to the amount of the damages in the light of the last provision which gives the right to the judgment creditor only to the extent that the assured would have, had he paid the judgment. Its logical construction is that the liability of the company is the same in either case; to wit, where the assured pays the judgment and sues or where the judgment creditor sues by virtue of the insolvency and consequent failure of the assured to pay the judgment, the creditor then standing in the shoes of the assured. Assuming that in this case the assured had paid the judgment and sued the defendant upon the policy, could it then be asserted that the company was foreclosed from raising the defenses involved in setting up a breach of a condition precedent by the insured to avoid liability? If a negative answer to the question is proper, then any other construction of the language concerning the judgment creditor's right in the case of insolvency as outlined in the policy would leave the language without consistent force and effect. To me, the reasoning of Judge Cothran in the Ott Case, supra, is unanswerable.

As I construe the policy, it is a private contract between the company and the insured which makes the liability of the insurer complete only upon the fulfillment of certain stipulated conditions by the insured, where the rights of the third parties only accrue upon those conditions being fulfilled and where such third party only has the same rights which the assured would have were he seeking indemnity upon the judgment for himself. Were the policy one in which the public was given an interest and right independent of any conditions imposed upon the assured, it may be assumed that the policy would have so stated in unmistakable terms, and doubtless in such a situation where unlimited liability is assumed by the insurer independent of the fulfillment by the assured of conditions imposed, the premium would have been somewhat greater than the $22 named in the policy, as under such circumstances the company would become liable for a judgment against the assured although it might never have before heard of the accident, or had any notice of the same or of the suit and judgment recovered against the assured. Such a policy was litigated in Gillard v. Manufacturers' Insurance Co., 93 N. J. Law, 219, 107 A. 446, 447, a case strongly relied upon by plaintiff, which policy contained the following language: "That, notwithstanding anything herein contained to the contrary, this company will pay any final judgment within the limits of this policy, recovered by any person or persons on account of the ownership, maintenance and use of automobiles"; followed by "this contract shall be for the benefit of every person suffering loss, damage or injury." The right of recovery by a third party under such a policy is at once apparent.

Presumably, the assured in a policy such as here would have some concern in not having a judgment entered against him and wish to be indemnified and for this purpose would have taken all necessary steps to bring about such indemnification. This did not, however, seem to worry the assured in the case at bar as he never took any steps looking to the matter of his indemnification by giving notice or otherwise, or in making any attempt to defend the suit against him.

The conclusion is, that the plaintiff has failed by the evidence to establish a cause of action against the defendant, and a judgment may be entered finding generally for defendant and dismissing the petition at plaintiff's costs, reserving to him proper exceptions.