### ROYAL INDEMNITY, CO. v. MORRIS.

Circuit Court of Appeals, Ninth Circuit.
December 17, 1929.

Rehearing Denied January 28, 1930.

No. 5824.

Ford & Johnson, of San Francisco, Cal., and F. A. Cutler, of Burlingame, Cal., for appellant.

Joseph A. Brown, of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. The appellee, having been injured in an automobile accident and recovered judgment for damages against one Gomez, the renter and driver of the car, who was charged with negligence resulting in the accident, brought this action against the appellant as the insurance carrier. The insurance policy involved contains a provision that the insolvency or bankruptcy of the assured does not operate to release the insurance company from the payment of damages, and that in case of a judgment against the insured and return of an execution thereon unsatisfied, "an action may be maintained by the injured person * * * against the company under the terms of the policy for the amount of the judgment," etc. Applicable also, the parties seem to concede, is a California statute (St. 1919, p. 776) requiring that all policies of this character contain a provision "that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy and stating that in case judgment shall be secured against the insured in an action brought by the injured person * * * then an action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person, * * * to recover on said judgment." A like policy provision and this statute we have considered in Metropolitan Casualty Ins. Co. v. Colthurst (No. 5823) 36 F.(2d) 559, decision filed December, 1929.

After the issue was joined, trial by jury was waived and the case submitted to the court upon a stipulation of the facts. In general, the question presented here is whether the failure or refusal of Gomez to furnish the appellant, the insurance carrier, with a copy of the process served upon him in the original suit, and to authorize it to appear and defend in his behalf, should be held to debar the plaintiff herein from recovering on her judgment against him, and on the policy. In that respect appellant alleged that Gomez failed and refused to forward or deliver to it the summons and complaint although requested by it so to do, and failed and refused to appear or authorize or permit the entering of an appearance in his behalf by appellant and, though so requested, failed and refused to authorize or consent to the defense of the action by appellant or its attorney. And the stipulation is to the effect that these averments are true.

It is further stipulated that service of the complaint and summons in the action was made on Gomez on January 12, 1928, and on the same day counsel for the plaintiff mailed to appellant copies of the complaint and summons with the date of service indorsed thereon, all of which appellant received on January 12th. Also that on January 11th the Hertz Drivurself Stations, Inc., one of the companies named as the insured in the policy, forwarded to appellant copies of the complaint and summons. And it is still further stipulated that appellant was given timely notice of the automobile accident. In view of these facts, it is no defense that Gomez did not in person forward copies of the complaint and process. Slavens v. Standard Accident Ins. Co. (C. C. A.) 27 F.(2d) 859, and the Colthurst Case, supra.

Appellant's principal contention is predicated upon the requirement that, "In the event of a claim or suit covered by this policy the Insured shall in no manner aid or abet the claimant but shall co-operate fully with the company, the Royal Indemnity Company, in defense of such claim or suit." In connection therewith is to be considered a further provision under which the insurer agreed in the name and on behalf of the insured to defend all suits for damages upon claims falling within the scope of the policy.

The policy, unusually comprehensive in its coverage, was intended to protect numerous persons of different classes and, owing to the fact that in its preparation a standard form was supplemented and modified by attaching thereto other provisions in the nature of riders, the instrument exhibits no little complexity and a measure of confusion. Generally speaking, the business to which it

relates consists of the renting of automobiles, without drivers, to persons who either drive them or independently employ drivers. Apparently there are three parent or principal companies to whom the policy was issued. In paragraph 1 of the "Schedule of Statements," specifying who are insured, these three concerns are expressly named as Hertz Drivurself Corporation, Hertz Drivurself Sales Corporation, and Hertz Drivurself System, and they together with all their "subsidiary and associated corporations," it is added, are in the policy "sometimes referred to as the 'named insured.'" Under licenses from one or more of these corporations, local companies conduct such business of renting cars, and these are also insured, being specifically designated as "licensees." Those who rent cars from the local companies are insured and distinctively classified as "renters"; those who for the renters drive cars so rented are protected and designated as "drivers."

Upon an analysis of the entire instrument, we think with reasonable clearness the intent is disclosed to designate all who can claim protection under the policy (excepting only the conditional and limited protection afforded to an injured person) as "insured," and in the general class are groups designated as "named insured," "licensees," "renters," etc. Hence while a "named insured" is necessarily an "insured," an "insured" may not be a "named insured." Under this view Gomez was both a "renter" and an "insured," and such contentions made upon behalf of appellee as rest upon the ground that the terms "insured" and "named insured" are synonymous are untenable.

Upon the assumption that Gomez, as we hold, was an "insured," it must be conceded, under the facts stipulated, that he violated a material condition of the policy in declining to permit any defense to be made to the action brought against him by the appellee; and, as we understand, it is not controverted that as a result of the default he forfeited his right to claim indemnity under the policy. That being true, the question remains whether the appellee is in any better position. This question we expressly reserved in the Colthurst Case, supra, but it now becomes necessary to decide it. Upon consideration we feel constrained to answer it in the negative. Such is the weight of authority as appears from the citations in the Colthurst Case. And see, also, Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 369. Speaking of a statute of New York to which

the provision of this policy in favor of the injured person conforms, the Court of Appeals of New York in the Coleman Case said: "The statute was prompted by a definite mischief. * * * Before its enactment, the insolvency of the assured was equivalent in effect to a release of the surety. The policy was one of indemnity against loss suffered by the principal, and loss to him there was none if he was unable to pay. The effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied. The cause of action is no less but also it is no greater. Assured and claimant must abide by the conditions of the contract." We see no escape from the reasoning of this and the other cases referred to in which a similar conclusion is reached, and it is equally applicable to the California statute. If the protection afforded by the statute is inadequate, that is a consideration for the Legislature and not for the courts.

It may be added that the duty of the insured in respect of permitting a defense in his name is not susceptible to precise general definition. He is not to be a mere puppet in the hands of the insurer; he is under no obligation to permit a sham defense to be set up in his name, nor can he be expected to verify an answer which he does not believe to be true; he cannot evade personal responsibility, and hence is not bound to yield to any demand which would entail violation of any law or ethical principle; but he cannot arbitrarily or unreasonably decline to assist in making any fair and legitimate defense. Here it is stipulated that he declined to permit any defense to be made in his name, and it is to be presumed that the defendant in such a case could at least legitimately challenge the amount of the alleged damage and require proof.

Appellee argues that, notwithstanding Gomez's refusal to defend, the insurance company might have protected itself by intervention. But while intervention might have afforded it a measure of protection, clearly in that position it would be at a disadvantage; and, besides, we are here discussing, not the question whether in spite of Gomez's default the insurance company could have protected itself, but whether he forfeited his rights by violating a material condition of the policy.

The judgment will be reversed, with directions to take further proceedings not inconsistent with the views herein expressed.