FIREMAN'S FUND INDEMNITY CO. v. KENNEDY.

No. 8625.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1938.

HANEY, Circuit Judge, dissenting.

Bronson, Bronson & McKinnon, of San Francisco, Cal., and R. F. Gaines, of Butte, Mont., for appellant.

Harrison J. Freebourn and Enor K. Matson, both of Helena, Mont., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment of the District Court for the District of Montana. The case was tried to a jury, and when it was announced that the plaintiff would offer no more testimony, the defendant by its attorney announced that it had no evidence to submit, and rested its case. Thereupon it interposed a motion for a directed verdict, which motion the court denied. The plaintiff then made a motion for a directed verdict, which motion was granted by the court, and under the direction of the court the jury returned its verdict for the plaintiff and against the defendant in the sum of $10,000.

This action is based upon what is commonly called a "blanket" automobile liability policy issued by the Fireman's Fund Indemnity Company, a corporation, to the City of Butte, Montana, as the assured and covers certain persons in that city's service, including motor patrol men. It is an action to recover on the policy after execution returned unsatisfied following a judgment for damages for personal injuries recovered by May Kennedy, appellee here, in her action against Harry E. Kinney, Jr., a motor patrol man, covered by the terms of the policy.

While on duty Kinney was driving a patrol car and was accompanied by another officer, Leroy McLeod. At about 11 A. M. on December 8, 1933, a car driven by John Holland, in which the appellee was riding as a passenger, struck the patrol car in the rear at a street intersection.

In her suit against Kinney appellee claimed that she was injured in the mishap. She recovered judgment in the sum of twenty thousand dollars in the District Court of the Second Judicial District of the State of Montana, in and for the County of Silver Bow, and this judgment has become final.

Failing to realize upon her judgment against Kinney, she now seeks to be paid by the insurance company up to the amount of the insurance of $10,000.

The specific section of the policy relied upon in this action by plaintiff below [appellee here] is as follows: "H. Bankruptcy or insolvency of the Assured shall not relieve the Company of any of its obligations hereunder. If any person or his legal representatives shall obtain final judgment against the Assured because of any such injuries, and execution thereon is returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or if such judgment is not satisfied within thirty days after it is rendered, then such person or his legal representative may proceed against the Company to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto."

Practically all of the issues on this appeal relate to the subject of notice to the insurer. Paragraph "D" of the insurance policy provides for notice in the following terms: "D. Upon the occurrence of an accident, the Assured shall give prompt written notice thereof to the Company's Head Office at San Francisco, California, or to its Eastern Office in New York City, New York, or to any Authorized Agent. If any claim is made on account of such accident, the Assured shall give like notice thereof with full particulars. If thereafter, any suit or other proceeding is instituted against the Assured to enforce such claim, the Assured shall immediately forward to the Company at its Head Office or its Eastern Office every summons or other process served upon him. Notice given by or on behalf of the Assured to any Authorized Agent of the Company within the State in which this policy is issued, with particulars sufficient to identify the Assured, shall be deemed to be notice to the Company, it being understood that failure to give any notice required to be given by this policy, within the time specified therein, shall not invalidate any claim made by the Assured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible."

The parties have raised several questions pertinent to this section: Considering the rights of appellee as a third party beneficiary under paragraph "H" of the policy, does paragraph "D" effect her rights? In the circumstances of this case does notice of injury and claim of appellee given some forty odd days after the collision comply with the contractual requirement as a matter of law? Was earlier notice impossible?

While each of these several questions will be considered, their close relation prevents entirely separate treatment.

■ It is the contention of appellant that under this contract of insurance the failure to give the required notice to the insurance company defeats the right of recovery by the injured party (appellee) from the insurance company exactly as it defeats the right of the assured to be indemnified by the company after the payment of a judgment.

Upon the other hand, appellee claims that the conditions of the policy relating to her maintenance of a successful action against the insurance company are all contained in Paragraph "H" of the policy, herein quoted. Specifically, that failure of Kinney or the City to give the required notice does not affect her right to recover from the company.

Appellee's position is unsound. This court considered a question similar in principle in Royal Indemnity Company v. Morris, 9 Cir.,1929, 37 F.2d 90, a suit by a third party beneficiary as in the instant case. The insurance contract required the insured to furnish the insurer a copy of process if suit were brought on a policy of personal indemnity. The insured did not comply with this provision of his policy and the court said (page 92): " * * * it must be conceded, * * * that he [insured] violated a material condition of the policy, * * * it is not controverted that as a result of the default he forfeited his right to claim indemnity under the policy. That being true, the question remains whether the appellee is in any better position. * * * Upon consideration we feel constrained to answer it in the negative. [Citing Metropolitan Casualty Ins. Co. v. Colthurst, 9 Cir., 36 F.2d 559, and referring to Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A. L.R. 1443.]"

We cite the following cases as sustaining the general principle elucidated in Royal Indemnity Co. v. Morris: Clements v. Preferred Acc. Ins. Co. of New York, 8 Cir.,1930, 41 F.2d 470, 76 A.L.R. 17;

Ocean Accident & Guarantee Corporation v. Lucas, 6 Cir.,1934, 74 F.2d 115, 98 A. L.R. 1461; Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443; General Casualty & Surety Co. v. Kierstead, 8 Cir., 1933, 67 F. 2d 523.

In the latter case it is said (page 525): "The right of the injured party to proceed against the insurer is dependent upon the provisions of the insurance contract. He can acquire no greater right thereunder than that existing in favor of the insured. In other words, if the conduct of the insured has been such as to bar him from right of recovery under the contract, then the injured party is likewise precluded from recovery. [Citing many cases.]"

We think the quotation clearly and accurately states the law.

■ Another and narrower distinction sought to be drawn by appellee is based upon the difference in wording of the so-called insolvency and bankruptcy clauses of insurance (paragraph "H") policies. The clause before the court in Royal Indemnity Co. v. Morris, supra, read: "An action may be maintained by the injured person * * * against the company *under the terms of the policy* * * *."* (Italics ours.)

Whereas the comparable language in the policy here being considered is: " * * * then such person * * * may proceed against the company to recover the amount of such judgment * * *."

The point sought to be established is that the clause quoted from the Morris Case applies all of the terms of the policy to the right of the injured to sue, whereas the comparable clause in the instant case gives the right to proceed against the company (under paragraph "H" of the policy) independent of the rest of the policy. This reasoning is erroneous; the injured person in proceeding against the company must proceed upon the terms of the contract as a whole. The section specifically giving her the right to proceed at all makes numerous general references to the policy. Standing alone it would be meaningless. See, New Jersey Fidelity & Plate Glass Ins. Co. v. Clark, 9 Cir.,1929, 33 F.2d 235, where the principle just stated is applied to interest upon a judgment. See, also, Appleman on Automobile Liability Insurance, p. 91 et seq.

For a complete discussion of the principle involved and for a dissertation on the importance of "prompt" notice to insurer, which will be later considered, see Clements v. Preferred Acc. Ins. Co. of New York, supra. We conclude that appellee's judgment against the appellant cannot be sustained if there remained unfulfilled the assured's contractual duty to give notice of the mishap.

Neither Kinney nor any one else for Kinney or for the city ever gave any notice to the company of the accident or of appellee's injury until the expiration of more than forty days after its occurrence.

The collision occurred December 8, 1933; on January 22, 1934, appellee's claim for damages resulting from the collision was received by the City Clerk of Butte, Montana, and an employee of appellant's heard it read in City Council the next day. Formal notice thereof was given the insurance company February 2nd, and received by it February 5th, 1934.

■ The policy required "prompt" notice and as the word "prompt" is a comparative term this requirement really means that notice must be given within a reasonable time in the particular circumstances. See annotation, 76 A.L.R. 23, 53. But to go further with this subject it will first be necessary to recite the applicable facts.

Immediately after the impact of the cars McLeod, Kinney's companion in his car, went back to Holland's car and Holland went up to the police car. Kinney, the driver, remained in his car while appellee remained sitting back in the seat of the other car. We are not given the benefit of the conversation had by or between the several parties during the "two or three" minutes before the cars drove away although the testimony about to be quoted refers to it. McLeod was not present at the trial. We quote the testimony practically in full.

Kinney's testimony:

"We were driving west on Galena Street, and at the west crossing at the intersection of Main and Galena we stopped the car to let an old lady get by and there was a car struck us from the rear. I saw that car after it had struck us. In the car were John Holland, driving, and May Kennedy. I did not go to the car. We stopped there a matter of two or three minutes.

"Q. Did it appear to you then to have been a serious accident? A. No, sir, none whatsoever.

"Q. Did you then understand that anybody had been hurt? A. No, sir.

"After that we went immediately to headquarters and made a report to the Chief and one to the Mayor and one to the City Clerk.

"I know Mr. R. F. Gaines. I told him about this accident."

Upon cross-examination:

"I personally delivered the copies of this report to the Mayor and the City Clerk, within fifteen minutes after the occurrence of the accident. The one that went to the Chief of Police was also typewritten. That was delivered practically the same time as the other two. I said something to Mr. Rothering to the effect that this seemed to be a trivial accident. It is a fact, that after the accident I observed the plaintiff, Miss Kennedy, to be crying in the automobile being driven by Mr. Holland.

"Q. And wasn't there some discussion, or direction rather, either by you or by McLeod in your presence, to the effect that they better take Miss Kennedy to the hospital to see if there wasn't anything wrong? A. That conversation wasn't in my presence, Mr. Gaines.

"Q. It wasn't in your presence? A. No sir.

"Q. Well, did you know from anything that Mr. Holland said about taking Miss Kennedy to the hospital? A. No sir.

"Q. Did you have any talk with Mr. Holland about any claim he made,—seeing you later? A. Yes sir."

Testimony of Mr. Gaines, a lawyer to whom Kinney talked: "Kinney did not tell me in substance the accident was to him a trivial one in which no claim would arise from it in his judgment. He told me that the collision was forceful; that he had slowed down his car and brought it to a complete stop to permit some elderly lady to pass in front of his car; that this elderly lady hesitated and McLeod leaned out and he said 'Go ahead, lady,' and with that she jumped back, and he was bumped into by the Holland car, and with that the police car was driven with so much force it was driven quite a number of feet ahead and over the west crosswalk; and he told me that Miss Kennedy then was crying, and was asked if she was hurt and she said she didn't know, and that someone said to Holland, or Holland said he was going to take her to the hospital to find out how seriously she was hurt, and he told Holland to come back to the police station and see him, and Holland said he had to go to Helena on some business, and he wondered why Holland did not come back. * * *"

Appellee's testimony: "It [the collision] was hard enough to cause me damages which I estimated as being worth some forty thousand dollars. It was hard enough to cause one of the bones in my foot to be broken and caused the blood supply to be cut off because of an infection in the leg. It also caused my nose to be broken and twisted out of shape; also to cause me many bruises and contusions on my face. Those things all happened right immediately as the result of this collision. The collision caused a mark across my nose, and it caused it to bleed a little bit, and my foot—they both hurt badly. It caused my nose to bleed, yes. Those bruises and contusions on my face were apparent right after the collision."

The notice mentioned by Kinney in his testimony was as follows:

"December 8th, 1933.
"Auto collision. Report of Collision—
"Chevrolet roadster.

"We were driving west on Galena Street and stopped to permit a woman to pass south on the west crosswalk of the intersection when John Holland, Clerk and Recorder, failed to observe our stop and smashed into back of car.

"Back of car—tire carrier and rim on spare wheel damaged.
"Time 11 A. M.
"Kinney & McLeod."

As already appears the policy specifically requires a prompt written report to the company "Upon the occurrence of an accident" and "If any claim is made on account of such accident, * * *." And "If any suit or other proceeding is instituted against the assured to enforce such claim."[1]

---

[1] The text of the annotation, subd. III(a), 76 A.L.R. 49, is interesting in that it distinguishes (with numerous authorities cited) between paragraphs of insurance policies covering this point by such language as "the assured, upon the occurrence of an accident, and upon notice of any claim on account of an accident shall give immediate notice, etc." and others using such language as "the

For a well considered opinion on the subject of notice, replete with authorities, see Phelan v. New Amsterdam Casualty Co., D.C., 5 F.Supp. 810.

In Friedman v. Orient Insurance Co., 278 Mass. 596, 597, 180 N.E. 617, 618, it is said: "Immediate notice of the loss in writing, required by the terms of the contract, was a condition precedent to recovery in this action. The burden of proving performance, or excuse for nonperformance, was on the plaintiff. [Citing numerous authorities.]"

"Prompt notice of accident is of great importance to it in preparing its defense, while the happening is fresh in the minds of witnesses and the facts may be more readily and accurately ascertained." Commercial Casualty Ins. Co. v. Fruin-Colnon Cont. Co., 8 Cir., 1929, 32 F.2d 425, 433; see, Clements v. Preferred Acc. Ins. Co., supra. It has been held that prejudice is presumed from failure to give immediate notice. St. Louis Architectural Iron Co. v. New Amsterdam Cas. Co., 8 Cir., 1930, 40 F.2d 344.

It will be recalled that the issues were submitted to the court upon motion from both parties that judgment be directed. Appellee argues that the facts present a case for the jury, while appellant contends that, as a matter of law, the contract was not complied with as to notice.

We briefly digest a few of the authorities which, in our opinion, either pronounce principles that lead to or directly confirm our conclusion that, as a matter of law, timely notice was not given.

In Southern Surety Co. v. Heyburn, 234 Ky. 739, 29 S.W.2d 6, a young lady was struck by an automobile. The court said (page 8): "Although it would seem the physical facts of the accident were such as would lead one to anticipate a claim had there been an apparent or external indication of injury, the young lady insisted that she was not hurt. * * * She refused all courtesy and assistance" creating "a bona fide belief that he would not be called upon * * * for damages. Under those circumstances a majority of the court is of the opinion that it was proper for the trial court not to have decided the case as a matter of law * * *."

In Midland Glass Co. v. Ocean, etc., Corporation, 102 Neb. 349, 167 N.W. 211, L.R.A.1918D, 442, an employee fell down stairs but stated he was not injured except for a slight abrasion of the skin on a finger and went on with his work. No notice was given to insurer. The court said (page 212): "He was not required to give notice of an injury so long as there was no evidence that the injury existed."

Chapin v. Ocean Acc. & G. Corporation, 96 Neb. 213, 147 N.W. 465, 52 L.R. A.,N.S., 227, is a leading and often cited case. Therein plaintiff's auto fender struck and threw a boy to the pavement. The boy said he was not hurt. Nearly a year later plaintiff was informed that the boy was ill and claimed the accident caused his illness. Then for the first time insurer was notified. The court held that notice was timely. In the course of the opinion the court used the following expressions (pages 467, 468):

"An insurance contract, like any other, must be reasonably construed."

"If no apparent injury occurred from the mishap, and there was no reasonable ground for believing at the time that bodily injury would result from the accident, there was no duty upon the assured to notify the insurer."

"If he [the boy] had received no injury, or if the accident would not in an ordinary mind induce a reasonable belief that it might result in bodily injury, there was no obligation to notify the insurance company." [Italics added.]

This court had the same question before it in Ohio Ins. Co. v. Rosaia, 9 Cir., 74 F.2d 522. An automobile stopped suddenly and a following car plunged into it. A woman in the leading car told the

---

assured, upon the occurrence of an accident shall give immediate written notice thereof * * * He shall give like notice * * * of any claim made, etc."

The note says that under clauses where the requirements of notice are split into separate sentences as in the latter illustration, and as in the instant case:

" * * * , it is held the 'immediate' written notice of accident stipulated for is to be given upon the occurrence of the accident (or within a reasonable time thereafter, construing the word 'immediate' to mean within a reasonable time), and under ordinary circumstances is not to be delayed until the happening of some other event, such as the presentation of a claim against the assured or the filing of suit against him or it." 76 A.L.R. 49.

driver in the following car that "she had hurt her head." (Page 523.) The driver asked to take her to a doctor, but she declined. When she walked across the road, the driver saw no evidence of injury or any contusions or cuts about her head and saw nothing that indicated that there was any damage done. Notice was not given insurer for a year and a half and not until claim for damages had been presented. This court held that in these circumstances the trial court did not commit error in declining to rule that the provision for giving notice was violated as a matter of law.

The opinion in Texas Glass Co. v. Fidelity & Deposit Co., Tex.Com.App., 244 S.W. 113, adduces the following from a review of the cases (page 115):

"It would seem to be a fair deduction from these holdings that, *when the insured has complied with its full duty to acquaint itself with all the facts* surrounding an accident, and it appears from such investigation that the occurrence was of such a nature as that it could not reasonably be expected to result in any claim or liability, there is no duty to report it. * * *

"On the other hand, it is equally clear that determination of the question whether an occurrence comes within the terms of the policy as being an accident required to be reported should not be left solely to the judgment or discretion of the assured. Consequently it has been held that the insured is not relieved from its duty to report an accident merely because its attorney made a full investigation and reached the conclusion that it was too trivial to report. In such case the assured acts at its peril. * * * [Italics added.]"

In Haas Tobacco Co. v. American Fidelity Company, 226 N.Y. 343, 123 N.E. 755, 13 A.L.R. 132, an employee was driving an automobile and a boy ran out from the curb and struck the machine and was knocked down. This was told the employer the next day and he asked if the boy was hurt. The driver replied: "only slightly, for I brushed off his clothes and he went away. * * * I don't think it amounts to much." (Page 756.) Notice was not given insurer for ten days. Judgment went against the insurance company after the reasonableness of the notice had been given to the jury, but was reversed upon appeal and the complaint was dismissed. This is, of course, a determination, as a matter of law, that the notice

was not timely. The court said in part: "Under these circumstances, the insured was not absolved from making the report required by its policy." And after referring to another case, argumentatively added: "But where, as here, a boy is knocked down in the street, and at least slightly injured, *the insured may not, without any investigation whatever,* rely solely upon his own opinion or upon the opinion of his driver that because he went away the injury was too trivial to require attention."

The Supreme Court of Montana had occasion to pass upon a question of notice in the case of Tuttle v. Pacific Mut. Life Ins. Co., 58 Mont. 121, 190 P. 993, 16 A.L.R. 601. There the court had to do with a claim of a beneficiary under a policy of insurance containing the following provision (page 996): "The claimant must deliver to the company * * * immediate written notice of any accident, * * * and deliver to the company * * * written affirmative proof of such injuries or death and whether said injuries or death were caused by external, violent and accidental means within the terms of this policy. * * *" The insured was lost while hunting and his remains were discovered more than two years thereafter. Claim for payment under the policy was made, refused, and suit followed. The court made findings and conclusions of law and entered judgment for the claimant. The company appealed. We quote from the opinion:

"And while the beneficiary did not know, immediately after the accident, the exact facts concerning the manner in which insured had met his death, she was, within a reasonable time after his disappearance, fully convinced of his death, and, under the terms of the contract, * * * should have given the required notice. * * *

"As was said in Hatch v. United States Casualty Co., 197 Mass. 101, 83 N.E. 398, 14 L.R.A. (N.S.) 503, 125 Am.St.Rep. 332, 14 Ann.Cas. 290: 'The promise to insure is not absolute but conditional. The condition is that the notice, whatever it may be and by whomsoever or whenever given shall be given. It is a condition precedent to the creation of liability or the life of the promise; or, to put it perhaps in a better way, the giving of the notice is one of the essentials of the cause of action. * * * If it be said, as it sometimes is, that such a defense is purely technical, the

answer (if one is needed) is that the provision for notice is of the essence of the contract, that it is manifestly an important provision for the protection of the insurer against fraudulent claims, and also against those which, although made in good faith, are not valid. It is a provision which tends to the elucidation of the truth when the claim for indemnity is made. It was one to which the insured agreed, and it is not unreasonable.'

"The giving of the notice of the accident, and the forwarding of affirmative proof of death, are two separate and distinct obligations. Under the circumstances of this case, the latter obligation could not be met until after the discovery of the body and a determination of the cause of death, if it was then possible; but the fact of the accident, if any, with its attendant circumstances, was known to plaintiff within a few days after the disappearance, but no notice thereof was given until June 19, 1911, nearly seven months thereafter.

"In the case of Foster v. Fidelity & Casualty Co., reported in 99 Wis. 447, 75 N.W. 69, 40 L.R.A. 833, it was held that where the beneficiary satisfied herself after investigation that her son's death was accidental, but did not give notice until 29 days thereafter, she did not bring herself within the requirement of 'immediate notice' "

In addition to the above, the matter of insufficiency of notice as to time was held to be a matter of law in each of the following cases.

Lewis v. Commercial Casualty Ins. Co., 1923, 142 Md. 472, 121 A. 259, 28 A.L.R. 1287. Expired time from accident to notice: forty-five days.

Hagstrom v. American Fidelity Co., 1917, 137 Minn. 391, 163 N.W. 670. Expired time from accident to notice: fifty-two days.

Smith & Dove Mfg. Co. v. Travelers' Ins. Co., 1898, 171 Mass. 357, 50 N.E. 516. Expired time from accident to notice: twenty-seven days. The opinion was by Mr. Justice Holmes, before he went to the Supreme Court of the United States.

Rushing v. Commercial Casualty Ins. Co., 1929, 251 N.Y. 302, 167 N.E. 450. Expired time from accident to notice: twenty-two days. The opinion was by Mr. Justice Cardozo before he went to the Supreme Court of the United States.

Rooney v. Maryland Casualty Co., 1903, 184 Mass. 26, 67 N.E. 882. Expired time from accident to notice: twenty-two days.

We have italicized certain expressions in the cases above referred to as a means of calling attention to the requirement that an insured omits notice to insurer at his peril. It is not enough for the insured to act upon his cursory knowledge of the facts; he must make an effort to know the facts. Thus, we find that notice of accident may be excused if from all of the circumstances "there was no evidence that the injury existed"; "if there was no reasonable ground for believing" there was injury; "if the accident would not, in an ordinary mind, induce a reasonable belief that it might result in bodily injury"; "when the insured has complied with its full duty to acquaint itself with all the facts surrounding the accident". But "the insured may not, without investigation whatever rely upon his own opinion." See, exhaustive note, 76 A.L.R. 23 et seq.

These requirements applied to the facts of this case leave no possible doubt as to the duty of Kinney to make the report to the insurer as required by the policy. There was an accident, there was an injury, evidence of injury was seen by insured (Kinney). He made no effort to find out how serious the injury was. If he had done so, he would have found indisputable evidence of serious injury. He knew that Holland had said something to him about making a claim. There is not a shred of evidence that he made any later investigation as to appellee's condition.

The following quotation from the concurring opinion in Southern Surety Co. v. Heyburn, 234 Ky. 739, 29 S.W.2d 6, at page 9, is particularly apropos of the situation in this case. "I cannot bring myself to the conclusion that a jury could reasonably say that a necessarily prudent man could reasonably think the accident in the instant case was not one which *might* result in a claim for damages. I do not mean to say, of course, that the appellee is not ordinarily a reasonably prudent man, but even the reasonably prudent man is sometimes caught off his guard. However, if he is, and, to paraphrase Justice Holmes, walks too near the line that divides prudent from imprudent conduct, he takes the risk, and if he oversteps the line, he must bear

the consequences with fortitude." (Italics the court's.)

There was no excuse for any delay in giving notice and we hold, as a matter of law, that prompt notice to the insurer in accord with the terms of the policy was required and was not given.

There is a provision in the insurance contract involved here to the effect that timely notice will be excused if the giving would have been reasonably impossible. Appellee argues that Kinney did not know of appellee's serious injuries and that, therefore, it was impossible for him to notify the company. This is specious reasoning. Kinney's lack of knowledge resulted from his failure to perform his plain duty to act as a prudent man in the circumstances and find out what was plainly to be seen by one who would look.

■ At the conclusion of taking testimony in the trial court, appellant, defendant there, moved the court for an instructed verdict. It should have been granted. As has been said: "Where the evidence is such that the court, in the exercise of judicial discretion, would set aside an adverse verdict, then a verdict should be directed. [Citing many authorities.]" General Casualty & Surety Co. v. Kierstead, supra.

In a well considered opinion, Travelers' Insurance Co. of Hartford, Conn., v. Nax, 3 Cir., 142 F. 653, at page 660, we find the following: "The only remaining matter to consider is, should the question, whether the stipulation for immediate notice had been complied with, have been submitted to the jury, or should peremptory instructions to find for the defendant on this point have been given by the court. If in the trial in the court below there had been, as to this point, any disputed facts or doubtful inferences from proven facts, they should of course have been submitted to the determination of the jury; but where, as in this case, there are no disputed facts, but simply an admitted failure of the insured, or of any one on his behalf, to give the immediate written notice stipulated for in the policy, for a period of 72 days, without any satisfactory explanation of such failure, there was no question at all to be submitted to the jury, and the court, as a matter of law, should have found that the stipulation had not been legally complied with. This view of the situation should have been manifested by the court, by peremptory instructions to find for the defendant."

To the same effect, Hagstrom v. American Fidelity Co., 137 Minn. 391, 163 N.W. 670, 671.

The opinion in Erie R. Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, 114 A.L. R. 1487, was received by us subsequently to the first draft of the above opinion and upon receipt of the opinion in that case we set aside submission of the instant case and requested counsel to brief the following points as regards Montana law: (1) whether the appellee's right is derivative and no greater than that possessed by the assured; (2) whether trial by jury was waived; (3) whether the delay in the notice was unreasonable as a matter of law.

The parties make no issue upon point (2), both conceding that a jury was waived. As to point (3) (requirement of notice) we think the cited case of Tuttle v. Pacific Mutual Life Insurance Co., 58 Mont. 121, 190 P. 993, 16 A.L.R. 601, clearly follows along the same reasoning as the cases cited herein from other states, and that in the circumstances of the instant case the law of Montana is in accord with our conclusions.

As to point (1) there is neither specific statutory law nor case determination in Montana and in reaching our conclusions upon this, as well as other points in the case, we have followed the paragraph of the opinion in Ruhlin v. New York Life Ins. Co., 1938, 58 S.Ct. 860, 82 L.Ed. ——, which reads as follows (page 862): "Application of the 'State Law' to the present case, or any other controversy controlled by Erie R. Co. v. Tompkins, does not present the disputants with duties difficult or strange. The parties and the federal courts must now search for and apply the entire body of substantive law governing an identical action in the state courts. Hitherto, even in what were termed matters of 'general' law, counsel had to investigate the enactments of the state Legislature. Now they must merely broaden their inquiry to include the decisions of the state courts, just as they would in a case tried in the state court, and just as they have always done in actions brought in the federal courts involving what were known as matters of 'local' law."

■ Inasmuch as both parties moved the court for instructed verdicts and did no

more, the case was thereby submitted to the court upon the evidence adduced. Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177. "The established rule is that where plaintiff and defendant respectively request peremptory instructions, and do nothing more, they thereby assume the facts to be undisputed and in effect submit to the trial judge the determination of the inferences properly to be drawn from them."

We decide that there was no evidence in the case to support a conclusion that prompt notice to the insurer was not required and that there was no evidence in the case to support a conclusion that this requirement was excused.

In this view of the case, the other points made have no significance.

The cause is remanded with instructions to the trial court to enter judgment for the defendant.

Reversed.

HANEY, Circuit Judge (dissenting).

I dissent.

The law of Montana governs the instant case. Erie Railroad Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, 114 A.L.R. 1487, April 25, 1938; Ruhlin v. New York Life Insurance Co., 58 S.Ct. 860, 82 L.Ed. ——, May 2, 1938; Rosenthal v. New York Life Insurance Co., 58 S.Ct. 874, 82 L.Ed. ——, May 16, 1938; New York Life Insurance Co. v. Jackson, 58 S.Ct. 871, 82 L.Ed. ——, May 16, 1938; Hudson v. Moonier, 58 S. Ct. 954, 82 L.Ed. ——, May 23, 1938. There is no decision in Montana on the precise point in issue here. The majority, therefore, have exercised their independent judgment in deciding the question. I think we may not do so here.

Paragraph H of the policy makes provision for appellee's right. That paragraph may be construed in either of two ways: (1) that appellee's rights are determined solely by such paragraph; or (2) that appellee's rights are derived from and dependent on those of the insured. See 2 Williston on Contracts (Rev.Ed.) 1060, 1061, §§ 364, 364A. Of these two constructions, the first is against appellant. The rule in Montana is that such a provision is to be construed most strongly against appellant. Rev.Codes Mont.1935, § 7545; Lyon v. Dailey Copper M. & S. Co., 46 Mont. 108, 121, 126 P. 931; Montana Auto Finance Corporation v. British & Federal Fire Underwriters, 72 Mont. 69, 75, 232 P

198, 36 A.L.R. 1495. I therefore think that the Montana courts will apply the first construction mentioned, and that it should control here.

I add that as an independent question I agree that appellee's rights are dependent upon those of the insured, but disagree with the holding that, as a matter of law, notice was not given within a reasonable time.