**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**
a Corporation, Plaintiff,

v.

**Blaine S. FANNIN, Doris Lamka**
and
**Harold F. Lamka, Defendants.**

**Civ. No. 3209.**

United States District Court
S. D. Ohio, W. D.
Feb. 25, 1966.

Clifford R. Curtner, Curtner, Selva, Perkin & Seller, Dayton, Ohio, for plaintiff.

John G. Peterson, Xenia, Ohio, for Doris and Harold F. Lamka.

No attorney for Blaine S. Fannin.

## FINDINGS OF FACT
## CONCLUSIONS OF LAW
## JUDGMENT

WEINMAN, Chief Judge.

In this action, plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter referred to as "National"), filed its Complaint against its insured, Blaine S. Fannin, d/b/a The Starlight Club, Doris Lamka and Harold F. Lamka. Doris Lamka and Harold F. Lamka are plaintiffs in an action in the Common Pleas Court of Greene County, Ohio (being case No. 37853) against Fannin for injuries, losses and expenses resulting from an accident which occurred on September 3, 1963 on the premises of Fannin. That suit seeks damages in the sum of One Hundred Forty Five Thousand Two Hundred Ninety Five and no/100 ($145,295.00) Dollars and costs. In this action, National seeks declarations that its Policy No. CGL 63 10 87A, issued to Fannin on said premises, does not provide coverage to Fannin in connection with the accident involving Doris Lamka; and in connection with the action filed in the Common Pleas Court of Greene County, Ohio, that National be discharged from the responsibility to defend that action or to respond in the payment of any judgment therein rendered. It is National's contention that Fannin has failed, as required by the conditions of the policy, to give notice of the accident, to cooperate with plaintiff and to give notice of the filing of the law suit in the State Court.

The Complaint in this action was filed on August 25, 1965 after which summons were served on each named defendant. Since none of the defendants appeared by responsive pleading or otherwise within the time provided by law, plaintiff filed its Application to the Clerk to enter a default on October 28, 1965. On October 29, 1965, by direction of the Court, the Clerk notified each defendant that an Application for Entry of Default had been filed; that each had not personally entered an appearance nor had any attorney entered an appearance on their

behalf and that the Application for Default would be granted and filed if the defendants or their attorneys did not enter an appearance within ten days from the date thereof. Before the expiration of the ten days' period, defendants Doris Lamka and Harold Lamka filed their joint answer through their counsel, denying for lack of knowledge the allegations contained in the Complaint. Defendant Fannin failed to make an appearance by himself or counsel within the time provided. On November 18, 1965, the Clerk entered default against defendant Fannin for failure to plead or otherwise defend, as required by law.

The Court, by reason of the issues raised by the Complaint and the answers of defendants Doris Lamka and Harold Lamka, ordered the case set for trial on December 20, 1965.

This case proceeded to trial on December 20, 1965 before the Court, no jury having been demanded. Defendant Doris Lamka appeared with her counsel. Defendant Fannin was subpoenaed by counsel for defendant Doris Lamka and called to testify by said counsel; however, defendant Fannin offered no defense in his behalf.

The case was tried to the Court upon the evidence, exhibits and default of defendant Fannin.

### FINDINGS OF FACT *

1. Defendant Fannin by the default, admitted that the allegations contained in the complaint were true. No entry of appearance to defend the action against Fannin was made by him, nor application to set aside the Order of Default, prior to submission of the issues to the Court on December 20, 1965.

2. Fannin had been in the restaurant business, in the City of Fairborn, for a number of years and in the early part of 1962, leased two buildings at 9–11 S. Central Avenue in Fairborn, to operate a restaurant and bar. These two building were separated by a wall. On April 20, 1962, he applied for and received a building permit from the City of Fairborn to open the wall between the two buildings and do remodeling.

3. J. D. Moore was an authorized agent for National and had his offices located directly across the street from the premises leased by Fannin, on Central Avenue, and was open at all business hours.

4. Fannin obtained from J. D. Moore Agency, Policy No. CGL 63 10 87A, effective from December 12, 1962 and expiring December 12, 1963, covering the premises at 9–11 S. Central Avenue, and said policy remained in effect until its expiration on December 12, 1963.

5. Plaintiff, National, is a corporation organized under the laws of the State of Pennsylvania and it executed and delivered to defendant, Fannin, d/b/a The Starlight Club, through its agent, J. D. Moore, the above policy of insurance, by the terms of which it agreed to pay on behalf of the insured, all sums for which the insured should become legally obligated to pay, because of personal injuries sustained by any person, caused by accident arising out of the ownership, maintenance or use of the premises located at 9–11 S. Central Avenue, Fairborn, Ohio.

By the terms of said policy, it was provided:

"Notice of Accident: When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

"Notice of Claim or Suit: If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

* The Court has adopted the findings of fact as submitted by counsel for plaintiff.

"Assistance and Cooperation of the Insured: The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

"Action against Company: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been fully determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

"Declarations: By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

6. On August 26, 1963, at about 9:00 P.M., Doris Lamka, accompanied by her brother, Donald W. Whitt, came into the bar area of the defendant, Fannin. There was a raised platform around the bar, which was carpeted and upon which were chairs for customers. The area was in the process of being remodeled and the rope that had been previously located at the edge of the platform in back of the chairs, had been removed. Mrs. Lamka seated herself at the bar with her back to the edge of the platform, and was drinking a soft drink. It is claimed that she had been warned about the absence of a rope railing and to be careful not to push her chair back over the edge. The platform extended about four feet from the edge of the bar. She moved her chair back and the rear legs dropped over the edge of the platform and she fell backwards, striking her head on a table. Fannin or his bartender called the Fairborn Police. Upon their arrival, she appeared to be in a semi-conscious state. The emergency crew of the Fairborn Fire Department were called to bring an ambulance. She was found lying on the floor and complaining of pain in her back, head and left ankle. She was carried by a stretcher to the ambulance and went into shock in route to Miami Valley Hospital, and became nauseated. She was admitted to the Miami Valley Hospital on August 26, 1963 at 10:00 P.M. and discharged on August 27, 1963 at 10:10 A.M.

On September 3, 1963, she became ill at her home and the Fairborn Emergency Squad took her at 4:15 A.M. to Miami Valley Hospital, where she was admitted and remained there until her discharge of October 4, 1963.

7. Fannin was present on the night of the accident at the time she and her brother came in. He and her brother had been acquaintances for a long time previously. Fannin knew that she had fallen off the platform and struck her head. He knew that she had been taken to the hospital by the Emergency squad on the orders of the Fairborn Police. He admitted that he had knowledge that an accident had occurred to her on his premises, for which he was insured, and that he did not know the extent of the injuries that resulted. He did not make inquiry at the hospital, or from the husband or brother of Mrs. Lamka, as to her condition or injury. He stated that he learned from one of the Firemen that she was taken to the hospital and later released. While he knew of the address of the brother and of Mrs. Lamka, he made no inquiry in any way to determine whether she was in fact injured. He admitted that he had not made any report to National or its agent, J. D. Moore, across the street, for the reason that he did not think any injuries she received was seri-

ous enough for the insurance company. Fannin undertook, at his own peril, to decide whether there was, or would be, a liability or not, and whether the injury received as a result of the accident, was severe enough to require a notice, as provided in the policy, to be given to National.

8. Being in business directly across the street from the agent, J. D. Moore, Fannin saw him almost daily and quite frequently—yet, he made no mention of the incident of the accident, involving Mrs. Lamka.

9. On February 26, 1964, or six months after the accident occurred, Marshall Peterson, attorney for Mrs. Lamka, wrote Fannin a letter, advising that on or about August 26, 1963, Mrs. Lamka was a patron and at about 9:00 P.M., fell backwards from a bar stool, striking her head on a table; and as a result, she had suffered loss of income and incurred numerous hospital and doctor bills. On February 28, 1964, Fannin took the letter across the street and gave it to Mr. Moore. Mr. Moore filled out a Loss Report to National, covering the facts set forth in Mr. Peterson's letter. The names of witnesses and details were not provided. This was the first notice given to National or its agent, of the fact of the accident.

10. During the six months interval between the accident of August 26, 1963 and the receipt of the letter of February 28, 1963, Fannin had completely remodeled the bar and area where the accident occurred and the premises had completely changed. During the same interval, various bartenders and employees who were present at the time it occurred, had long since departed.

11. In accordance with the general instructions from the Columbus main office of National, J. D. Moore transmitted the report of the accident for investigation to General Adjustment Bureau, Inc., in Dayton, Ohio, being an investigation bureau, maintained by various companies, including National. Immediately after the receipt of G.A.B. of the loss notice, various representatives sought to contact Fannin.

He was open twenty-four hours a day and had telephone service. Numerous personal contacts and telephone calls were made to the residence of Fannin, as well as his restaurant and bar, with a request that he call. Business cards of the adjusters were left at the bar and also at his residence. Evening telephone calls were made in an attempt to locate him. Fannin admitted that he obtained the cards and messages left for him, and that he had tried to call on at least one occasion, but did not leave his number when the person designated was not in.

12. Because of the delayed notice and of the inability to determine what had occurred, National had instructed the representatives of G.A.B. to obtain from Fannin a signed Non-Waiver Agreement, or Reservation of Rights, which permitted the company to make an investigation of all the circumstances arising out of the accident, without waiving any of its policy conditions. This procedure was the common usage in such instances of delayed notices.

13. Several contacts were immediately made to Mr. Marshall Peterson in Xenia, Ohio by G.A.B. representatives and, when they were not successful in making the contact, a letter was written under date of April 29, 1964, reporting this situation and stating they would be most happy to consider the clients claim if he would provide them with all of her allegations, medical evidence and accounting, arising out of the alleged incident. Nothing was heard from Mr. Peterson until the latter part of September, 1964, at which time G.A.B. was advised that her expenses and loss of earnings was $2,900.00, and a demand of $50,000.00 for the injuries was made. This was the first that National learned or had knowledge of the extent of the seriousness of the claim of Mrs. Lamka for the accident of August 26, 1963.

14. During the period from the receipt of the letter from Mr. Peterson of February 28, 1964 until September 29, 1964, representatives of G.A.B. had persisted in trying to locate, interview and obtain the cooperation of Fannin, but

without success. Fannin was present in his business on each day and was open twenty-four hours.

15. Upon receiving word of the demands made by Mr. Peterson on behalf of Mrs. Lamka at the end of September, 1964, and on October 9, 1964, a notice of Reservation of Rights was mailed to Fannin by the Columbus Office of National, stating that they would investigate the accident which occurred on August 26, 1963, involving an alleged injury to Doris Lamka, with a Reservation of Rights and without prejudice and subject to the conditions, limitations and agreements of said policy. This was mailed to Fannin at the address stated in the policy, 9–11 S. Central Avenue, Fairborn, Ohio.

On October 18, 1964, by pre-arrangement, Columbus counsel of National met with Mr. Murrman of G.A.B., together with a Court Reporter at the offices of J. D. Moore at 9:00 A.M. Upon their arrival, they discovered that a fire had occurred in the bar of Fannin on September 11, 1964 and destroyed the physical contents of the bar where this accident is alleged to have occurred. They went to the insured premises, across the street from the agent and found it locked and closed for business. They then drove to the residence of the insured—Fannin, and after waiting some time, returned to the bar. Eventually, they found Fannin, identified themselves, referred to the Reservation of Rights letter and demanded to take his statement by a Court Reporter. Therein, Fannin admitted that he knew that an accident had occurred to Mrs. Lamka and that he had seen her taken by stretcher in an ambulance to a hospital; that he had determined that it was not a matter to be reported to the insurance company; that his business had been completely remodeled and the condition of the premises changed before the receipt of the letter from Mr. Peterson; and that he had given no notice to Mr. Moore, whom he saw daily, of the accident. He was asked for the names of witnesses, his help on duty at the time, and replied that he did not know their identity, but upon their request, promised to supply this information. This he never did.

16. Fannin remodeled the business after the fire of September, 1964 and re-opened with continued operation until the summer of 1965, when he sold out.

17. On July 31, 1965, in Case No. 37953, Doris Lamka and Harold F. Lamka brought their action in the Common Pleas Court of Greene County, Ohio against Fannin, d/b/a The Starlight Club at 9–11 S. Central Avenue, Fairborn, Ohio, praying for damages in the amount of $145,-295.00 and costs. Summons was issued by the Clerk of that Court on July 31, 1965 and on August 1, 1965, personal service of the writ was made upon Fannin. Fannin did not immediately forward the summons or notice of the suit to National, or to any of its agents, and in fact, has not done so to the date of the submission of this action to the Court.

The agent and representatives of National observed newspaper items relative to the law suit being filed and a copy of the Petition was mailed by Mr. Peterson to counsel for National. Thereupon, National took prompt action in filing the Complaint herein, seeking Declaratory relief.

18. Because of the delay in reporting the accident to National; the failure of Fannin to cooperate therewith; and the failure to deliver the summons to it, said plaintiff-company was delayed, prejudiced and hampered in the investigation of said accident.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter in this controversy. Title 28 U.S.C.A. §§ 1332 and 2201.

2. Defendant Fannin, by not filing a responsive pleading to the Complaint, admits that the allegations contained therein are true. Rule 8(d), Federal Rules of Civil Procedure. Default was entered against Fannin for failure to plead or otherwise defend as required by law by this Court on November 18, 1965, and this has not been disturbed.

3. Since neither written nor oral notice of the accident herein involved was given to National or any of its authorized agents as soon as practicable, plaintiff was deprived of its right to make seasonable investigation. The Court concludes that the terms and conditions of the policy issued by plaintiff to defendant Fannin were breached by the failure of said defendant to report the accident in accordance with the terms of the policy. Further, the terms and conditions of said policy were breached for failure of Fannin to cooperate with National after he gave Mr. Moore the letter from Marshall Peterson, attorney for Mrs. Lamka. (See finding of fact 9). The Court concludes that under the applicable law of Ohio, plaintiff is discharged from its obligation of indemnity and to defend.

4. There is no ambiguity in the terms of the policy involved in this case. The policy makes the giving of notice a condition precedent and a failure to comply with the terms and conditions of the policy bars recovery. Hartford Accident & Indemnity Co. v. Lochmandy Buick Sales, Inc., 302 F.2d 565 (7th Cir. 1962); and Firemen's Fund Indemnity Co. v. Kennedy, 97 F.2d 882 (9 Cir. 1938).

5. Prompt notice of an accident is of great importance in preparing a defense while the happening is still in the minds of witnesses and the facts may be more readily and accurately ascertained. Firemen's Fund Indemnity Co. v. Kennedy, supra.

## JUDGMENT

Accordingly it is hereby ordered, adjudged and decreed:

That the policy issued by plaintiff to defendant Blaine S. Fannin and all of the provisions therein are hereby declared not to be applicable to the claims of the defendants, Doris Lamka and Harold F. Lamka, for the injuries alleged to have occurred on August 26, 1963;

That plaintiff is not obligated to defend the law suit pending in the Greene County Common Pleas Court, wherein Doris Lamka and Harold F. Lamka are plaintiffs and Blaine S. Fannin is the defendant;

That National shall not be obligated to respond to any judgment, costs, expenses or award, by reason of the pending litigation in Greene County, Ohio.

That judgment is therefore rendered in favor of plaintiff, National Union Fire Insurance Company, and against each defendant.